[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-13600
Non-Argument Calendar
_____

D.C. Docket No. 1:12-cv-23321-CMA

UNITED STATES OF AMERICA,

Plaintiff-
Third Party Defendant-
Counter Defendant-
Appellee,

versus

LUIS ROMERO,

Defendant-
Third Party Plaintiff-
Counter Claimant-
Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(April 14, 2014)

Before TJOFLAT, HULL and JORDAN, Circuit Judges.

PER CURIAM:

In this student loan case, defendant-appellant Luis Romero, proceeding pro se, appeals the district court's: (1) grant of summary judgment in favor of plaintiff-appellee the United States of America; and (2) dismissal of his counterclaim. The United States Department of Education ("USDOE") is the holder of Romero's promissory notes for his federally-insured student loans, and the United States Attorney for the Southern District of Florida pursues this appeal on behalf of the USDOE (unless otherwise noted, we refer collectively to the USDOE and its representative as the "U.S. government"). Romero brought a counterclaim, alleging that the U.S. government breached its obligations under the notes. The district court dismissed the counterclaim, and later granted the U.S. government's motion for summary judgment on its student-loan-collection claims against Romero. After careful review, we affirm.

## I.  FACTUAL BACKGROUND

We set forth the underlying facts regarding Romero's student loans.

### A.    The 1980s Undergraduate Loans

During 1981 and 1982, Romero executed a promissory note for a student loan for $1,750.00, another promissory note for a second student loan for $2,500.00, and another promissory note for a third student loan for $2,500.00

(collectively, the "1980s undergraduate loans").  Each note provided: (1) for nine percent annual interest; (2) that failure to make a payment when due would give the note holder the right to demand payment of the entire loan and interest[1]; and (3) that periodic payments need not be made so long as Romero remained a full-time student, but that interest would accrue during such periods.[2]

The direct lender was Dade Savings and Loan Association ("Dade S&L").  The loans were guaranteed by the Florida Department of Education, Office of Student Financial Assistance (the "FLDOE"), and reinsured by the USDOE.  Additionally, the 1980s undergraduate loans were serviced by the Student Loan Marketing Association ("SLMA").

On December 17, 1983, Romero graduated from the University of Florida.  In 1984, he enrolled in the University of Florida's Doctor of Veterinary Medicine program.

As long as Romero remained a full-time doctoral student, he was able to defer repaying his student loans.  See 34 C.F.R. § 682.210(b)(1)(i) (1988)

---

[1]The first two notes provided: "[i]n the event of a failure to make any payment when due hereunder, the entire unpaid indebtedness including interest due and accrued thereon shall at the option of the lender or any other holder of this note become immediately due and payable."  The third promissory note included a similar clause: "[i]f I default on this loan, the lender may declare the entire unpaid amount of the loan, including interest, immediately due and payable . . . . [A]ny of the following events could be considered a default: my failure to make a payment when it is due."

[2]The third promissory note stated that the Secretary of Education would make interest payments while Romero was a full-time student "if the lender determines I qualify to have such payments made on my behalf."  The record does not suggest that any such determination was ever made, or that the Secretary did make such interest payments for Romero.

("Deferment is authorized during periods when a borrower is engaged in . . . [f]ull-time study at a participating school . . . ."). As a condition for receiving a deferment, Romero had to "request the deferment and provide the lender with all documentation required to establish eligibility for a specific type of deferment." Id. § 692.210(a)(4). Romero knew about these requirements.

The last written deferment request by Romero in this record is an "enrollment status and certification form" (the "form"), dated February 2, 1988, which the University of Florida's registrar issued to Romero. This form certified that Romero was enrolled as a full-time student from January 4, 1988 until May 2, 1988. The form stated that Romero's "anticipated date of graduation" was May 1989. Romero sent this form to the SLMA. But Romero did not send any forms certifying he was a full-time student after May 2, 1988.[3]

Apparently due to Romero's failure to request a deferment for the fall 1988 semester or to send in a full-time student certification, on August 20, 1988, the SLMA sent Romero a repayment schedule and disclosure statement for the 1980s undergraduate loans. That document informed him that a payment of $81.89 was due on November 15, 1988, and that 119 additional payments of $85.50 would be due each month thereafter.

---

[3]Romero, however, remained a full-time student and did not obtain his doctoral degree until May 1989.

4

Romero did not make any of the required payments. On December 24, 1988 and January 7, January 21, and February 11, 1989, the SLMA sent Romero written notices of the missed payments. On January 24 and January 26, 1989, the SLMA telephoned Romero about the missed payments. Between February and July 1989, the SLMA sent Romero eight more letters and made six more attempts to contact him via telephone.[4] However, Romero did not make any payments.

On October 18, 1989, Romero was declared in default on his 1980s undergraduate loans. Dade S&L filed a claim with the FLDOE pursuant to the guaranty agreement. The FLDOE paid a claim of $7,312.57. Pursuant to the reinsurance agreement, the USDOE reimbursed the FLDOE the full amount. In 2004, the FLDOE assigned its right and title to the loans to the USDOE.

As of February 9, 2011, Romero owed $22,056.26 on the 1980s undergraduate loans, consisting of: (1) $7,312.57 in principal; and (2) $14,743.69 in interest.[5]

**B.     The 1992 Consolidated Graduate Loan**

---

[4]Romero disputes that the SLMA made these attempts at contacting him. However, the U.S. government introduced business records showing that the attempts occurred. In any event, whether the attempts were made is immaterial to our ultimate analysis.

[5]This "principal" figure reflected the original principal amounts of the three loans ($6,750), plus interest that accrued between the dates on which the loans were disbursed, and October 1989, when Romero defaulted on them. The "interest" figure reflected interest that accrued, and which continues to accrue, post-default.

Between 1983 and 1989, Romero obtained six additional student loans for graduate school. On November 15, 1989, Romero began the process of consolidating his student loans by signing an "application/promissory note" for a new consolidated student loan from lender Sallie Mae.

On this application/promissory note, Romero listed nine loans he wished to consolidate, including the three 1980s undergraduate loans. Sallie Mae proceeded to verify the amounts of the student loans and whether the loans were eligible for consolidation. According to the sworn declaration of a USDOE loan analyst, Michael Illes (the "Illes declaration"), Romero could not consolidate the three 1980s undergraduate loans because, by 1989, he had already defaulted on them. This left the six 1983 to 1989 loans for him to consolidate.

On November 13, 1991, Sallie Mae sent Romero a promissory note addendum, stating that the total payoff balance was $50,188.69, which covered only the six consolidated loans (the "1992 consolidated graduate loan"). On December 20, 1991, Romero signed and returned this note addendum.

Afterwards, on May 14, 1992, Sallie Mae disbursed the consolidated loan in two installments for a total of $52,188.00.[6] Sallie Mae then sent Romero a "disclosure statement" showing: (1) that Sallie Mae had paid off Romero's unpaid

---

[6]The difference between the May 1992 disbursement amount ($52,188.00), and the November 1991 unpaid balance estimate reported in the addendum ($50,188.69) resulted from interest which accrued on the graduate loans between November 1991 and May 1992.

6

graduate student loans (including principal and interest); (2) the new principal amount on Romero's consolidated graduate loan ($52,188.00); and (3) that this new consolidated loan had a nine percent interest rate.

The guarantor of the 1992 consolidated graduate loan was United Student Aid Funds, Inc. (the "guarantor"). The USDOE reinsured the loan. On May 30, 1998, Romero defaulted and the holder of the 1992 consolidated graduate loan filed a claim with the guarantor. The guarantor paid $85,221.86 to the holder (based on the original principal amount of $52,188.00 and interest which accrued between 1992 and 1998). The USDOE, pursuant to the reinsurance agreement, reimbursed the guarantor that full amount. On November 14, 2006, the guarantor assigned its rights to the loan to the USDOE.

As of February 9, 2011, Romero owed $182,328.32 on the 1992 consolidated graduate loan, consisting of: (1) $85,221.86 in principal; and (2) $97,106.46 in interest.[7]

## II.  PROCEDURAL HISTORY

### A.    The Pleadings

In 2012, the U.S. government filed a complaint seeking to recover a total of $216,565.00 for Romero's undergraduate and 1992 consolidated graduate loans.

---

[7]This "principal" figure reflects the original principal amount ($52,188.00), plus interest that accrued between 1992 and 1998, before Romero defaulted on the loan. The "interest" figure reflects interest that accrued, and which continues to accrue, post-default.

The U.S. government attached certificates of indebtedness.  Romero filed a pro se answer asserting 14 affirmative defenses and a counterclaim.

After reciting the dates, amounts, and lenders on the loans, Romero's counterclaim alleged: (1) "As the Defendant was still in school on 12/15/88, the Defendant did not graduate until 1989, the holder and guarantee agency breached the terms of the contract by paying said claim as a direct breach of the contract terms"; and (2) "The creditor/Plaintiff breached the contract when they allegedly loaned said funds to Defendant, which they had classified as a person in 'default' as of 12/15/1988."  The counterclaim stated that Romero "suffered substantial money damages."

## B.    Dismissal of Romero's Counterclaim

The U.S. government moved to dismiss Romero's counterclaim under Rule 12(b)(6) and (e) of the Federal Rules of Civil Procedure.  The U.S. government offered three reasons: (1) Romero did not attach to his pleading a copy of the contracts on which he based his claims, as required by the Florida Rules of Civil Procedure, see Fla. R. Civ. P. 1.130, and therefore did not give the U.S. government "fair notice of what the . . . claim is and the grounds upon which it rests"; (2) Romero did "not state what his alleged damages are or how much his alleged damages are," also depriving the U.S. government of fair notice of the claim; and (3) the claims were barred by Florida's five-year statute of limitations

8

for actions on contracts, see Fla. Stat. § 95.11(2)(b).  In sum, the U.S. government emphasized that the counterclaim was "void of any allegations which would support a cognizable cause of action against the UNITED STATES for the cause of action asserted."

The district court granted the motion to dismiss.  The district court noted that Romero had not responded to the government's motion and the failure to respond was "sufficient cause to grant the Motion."  The district court also considered the merits of the motion and dismissed the claims as barred by the applicable statute of limitations.[8]

## C.    U.S. Government's Motion for Summary Judgment

The U.S. government moved for summary judgment on its loan-collection claims and attached evidentiary materials.  The U.S. government filed, inter alia: (1) copies of Romero's loan applications; (2) copies of the promissory notes and the addendum to the promissory note on the 1992 consolidated loan; (3) certificates of indebtedness; (4) the sworn Illes declaration, which described events associated with Romero's loans; (5) a University of Florida document showing the dates in which Romero was enrolled as a student; (6) the 1988 "enrollment status & certification form" previously discussed; (7) the 1988 repayment schedule the

---

[8]Thereafter, Romero filed an untimely response to the U.S. government's motion, which the district court construed as Romero's motion for reconsideration.  The district court denied the motion for reconsideration.

SLMA sent to Romero after Romero failed to certify that he remained a full-time student; and (8) a document from the SLMA, showing the dates on which the SLMA tried to contact Romero after Romero missed payments the 1980s undergraduate loans.

In response, Romero did not dispute that: (1) he applied for the loans; (2) he received money pursuant to the loans; (3) the loans are presently due; or (4) he had not made any payments on the loans.  Rather, Romero's response argued: (1) that he was improperly placed in default in October 1989 on the three 1980s undergraduate loans because those three loans were not due until ten months after his May 1989 veterinary school graduation (which meant March 1990); and (2) the 1992 consolidated graduate loan included the three 1980s undergraduate loans and thus Romero was being asked to pay twice for the 1980s undergraduate loans.

The district court granted the summary judgment motion, concluding that the government's evidence established its entitlement to recover on the 1980s undergraduate loans and the 1992 consolidated graduate loan.  The district court determined that Romero did not point to genuine issues of material fact refuting the government's evidence.

As for the 1980s undergraduate loans, the district court concluded that the lender properly placed Romero in default as of October 1989.  Romero's last deferment notice in this record certified that he was a full-time student until May 2,

1988.  The district court concluded: "the grace period began on May 2, 1988, and the lender properly defaulted the loan over a year later in October 1989."  The district court explained: "it is not the lender's obligation to infer Defendant may have graduated at some future date; it was Defendant's obligation to seek a deferment . . . .  Plaintiff establishes Defendant requested a deferral on the 1980s Promissory Notes to May 2, 1988, but not beyond.  Defendant offers no evidence that he requested a deferral beyond May 2, 1988."  The district court concluded that Romero's failure to offer evidence of further deferment requests was an implicit admission that "he sought no such deferral."

The district court gave an alternative basis for granting summary judgment on these undergraduate loans.  The district court pointed out that each loan authorized the loan's holder to declare the loans immediately due and payable if Romero missed a payment.  Because Romero did "not assert he never failed to make a payment," he necessarily offered insufficient evidence to defeat summary judgment.  According to the district court, Romero indisputably defaulted on the loans, regardless of whether he did so in 1988 or sometime later after March 1990.

As for the 1992 consolidated graduate loan, the district court rejected Romero's contention that the government was trying to twice collect on the same loans.  Based on the record, the district court determined: "[w]hile the 1992

Promissory Note consolidated several loans, the defaulted 1980s Promissory Notes were not consolidated."

Romero timely appealed.

## III.  DISCUSSION

### A.    Summary Judgment

We first consider whether the district court properly granted the U.S. government's motion for summary judgment on its loan-collection claims.[9]  To recover on a promissory note for a federally-insured student loan, the U.S. government was required to show: (1) the defendant signed the note; (2) the U.S. government is the present owner and holder of the note; and (3) the note is in default.  See United States v. Petroff-Kline, 557 F.3d 285, 290 (6th Cir. 2009); United States v. Lawrence, 276 F.3d 193, 197 (5th Cir. 2001).

As noted earlier, the U.S. government's evidence included the three promissory notes for the 1980s undergraduate loans and the promissory note and addendum for the 1992 consolidated graduate loan.  Each document bears

---

[9]We review a district court's grant of summary judgment de novo, viewing the facts and drawing all reasonable inferences in the light most favorable to the non-moving party.  Goodman v. Kimbrough, 718 F.3d 1325, 1331 (11th Cir 2013).  Summary judgment is appropriate when the movant shows that there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); see Goodman, 718 F.3d at 1331.  Genuine disputes are those in which the evidence would allow a reasonable jury to return a verdict for the non-moving party.  Ellis v. England, 432 F.3d 1321, 1325–26 (11th Cir. 2005).  For a factual dispute to be genuine, it must have a real basis in the record, and mere conclusions or unsupported allegations will not defeat a motion for summary judgment.  Id. at 1326.

12

Romero's signature.[10]  Romero does not dispute that he signed the notes, received the loans, and has not paid any sum on the loans.  Romero also does not dispute that the U.S. government now owns the loans.  Furthermore, the certificates of indebtedness show: (1) that Romero defaulted on the loans at issue; and (2) the dates on which those defaults occurred.  Accordingly, the undisputed evidence in the record established the U.S. government's right to recover on the loans.

Romero does not point to any evidence in the record creating a genuine issue of material fact as to the U.S. government's right to recover.  As for the 1980s undergraduate loans, Romero contends he was not required to start repayment until ten months after his May 1989 graduation from veterinary school.  But Romero introduced no evidence showing that he was entitled to a deferment beyond May 2, 1988.  Notably, the record does not show that Romero properly certified that he remained a full-time student beyond this May 2, 1988 date and Romero was required to establish his full-time student status in order to defer repaying his loans.  See 34 C.F.R. § 682.210(a)(4), (b)(1)(i).  Therefore, his first payment came due on November 15, 1988 and he was properly placed in default in October 1989 after he failed to make that payment and the ensuing payments.

---

[10]On appeal, Romero challenges the authenticity of the U.S. government's documents. He did not raise these challenges before the district court, and thus they are waived. See Access Now, Inc. v. Sw. Airlines Co., 385 F.3d 1324, 1331 (11th Cir. 2004).

13

Furthermore, even if Romero was entitled to not start making payments until March 1990, the record does not show that Romero made any payments after that time. As soon as Romero missed a payment, after March 1990, the holder of the notes was entitled to demand full repayment. Therefore, Romero defaulted on the notes, whether in October 1989, or sometime later after March 1990. Because interest continued to accrue while the loans were in deferment, when Romero's deferment ended is immaterial to determining what amount he now owes. Accordingly, the U.S. government was entitled to summary judgment on its right to recover the full amount it sought for the 1980s undergraduate loans.

Romero also does not create a genuine issue of material fact about the U.S. government's right to recover on the 1992 consolidated graduate loan. Romero argues about which loans were included in the consolidated loan, and how much is due on that loan. However, the U.S. government seeks to recover the principal and interest based on the 1992 promissory note and the addendum, both of which Romero signed. Romero agreed to repay the amounts stated on the faces of those documents, and we do not delve into the issue of what the basis of that agreement was. The record makes clear that the U.S. government is entitled to enforce the terms of the 1992 consolidated graduate loan.

## B.    Rule 12(b)(6) Dismissal of Romero's Counterclaim

We next consider whether the district court properly dismissed Romero's counterclaim.[11]  The district court determined that Florida's five-year statute of limitations for breach-of-contract actions applied to Romero's counterclaim.  We need not reach the complicated issues of whether Florida law or federal law governs here, or what the correct Florida limitations period is on Romero's counterclaim, because his counterclaim fails to state a claim in any event.  Wilchombe v. TeeVee Toons, Inc., 555 F.3d 949, 960 (11th Cir. 2009) (stating we may affirm on any basis supported by the record).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009).  The counterclaim did not contain sufficient factual matter to show that the claim was plausible.  See id.; see also Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964–65 (2007).

Specifically, Romero alleged that the "guarantee agency breached the terms of the contract by" paying the lender's claim when Romero defaulted on the 1980s undergraduate loans.  However, Romero did not point to any contractual language, such as a provision of the promissory notes, which he alleged was breached by that

---

[11]We review a Rule 12(b)(6) dismissal for failure to state a claim de novo, accepting the allegations in the complaint as true and construing them in the light most favorable to the non-moving party.  Speaker v. U.S. Dep't of Health & Human Servs., 623 F.3d 1371, 1379 (11th Cir. 2010).

payment.  Furthermore, Romero did not explain how the U.S. government could be liable for an alleged breach.

Romero also claimed that the U.S. government "breached the contract" when Sallie Mae "loaned said funds to Defendant, which they had classified as a person in default as of 12/15/1988."  But, Romero did not state what "contract" the U.S. government breached, much less point to a specific contractual provision.

Furthermore, Romero alleged that the breaches caused him to incur "substantial money damages."  But, he did not offer anything to show how he incurred those damages, or what those damages might be.

Thus, his counterclaim failed to provide an adequate basis for concluding that he raised a plausible breach-of-contract claim.  See Ashcroft, 556 U.S. at 678, 129 S. Ct. at 1949.  Accordingly, the counterclaim was insufficient to survive a motion to dismiss under Rule 12(b)(6), and we affirm the district court's dismissal of the counterclaim.

## IV.  CONCLUSION

For the foregoing reasons, we affirm.

**AFFIRMED.**

16